UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PONGDEJ SAUBHAYANA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　Defendant. | Case No. CV-06-1573 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I.　PROCEEDINGS

On March 16, 2006, plaintiff Pongdej Saubhayana filed a Complaint seeking review of the Commissioner's denial of benefits. The parties have filed a consent to proceed before a United States Magistrate Judge. This matter is before the Court on the parties' cross-motions for summary judgment, respectively "Plaintiff's Motion," and "Defendant's Motion."[1]

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED IN PART AND REMANDED for further

---

[1] Plaintiff filed a motion for summary judgment on June 9, 2006. Defendant filed a cross-motion for summary judgment and an opposition on July 12, 2006.

proceedings consistent with this Memorandum Opinion and Order of Remand because the Administrative Law Judge ("ALJ") committed an error, which this Court cannot find to be immaterial, in assessing plaintiff's subjective testimony regarding his symptoms and limitations.

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 27, 1999, plaintiff filed an application for benefits, asserting that he became disabled on March 30, 1995, due to physical impairments. (Administrative Record ("AR") 100). The ALJ examined the record and heard testimony from plaintiff (who was represented by counsel), a vocational expert, and a medical expert on March 14, 2005. (AR 539-62).

On March 23, 2005, the ALJ found, inter alia: (1) plaintiff suffered from the following severe impairments: mild degenerative joint disease of the neck and lower back with no nerve root impingement, type II diabetes controlled with oral medication, and chronic tension headaches (AR 20, 23); (2) plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments (AR 23); (3) plaintiff retained the residual functional capacity to perform medium work[2] (AR 21); (4) plaintiff could perform his past relevant work as a communication technician (AR 22-23); (5) plaintiff's complaints of disabling pain and symptoms were not credible (AR 22, 23); and (6) plaintiff's allegations regarding his limitations were not totally credible. (AR 23). The Appeals Council denied plaintiff's request to review the ALJ's decision. (AR 7-10).

---

[2]The ALJ noted that plaintiff: (i) could lift and carry fifty pounds occasionally and twenty-five pounds frequently; (ii) could stand, walk, and sit for six hours in an eight hour day; and (iii) was precluded from working in extremely cold temperatures, around bright lights, and noisy environments. (AR 21-22, 23).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in

significant numbers in the national economy? If so, the
claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability). If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Id. When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ should take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a

mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.  DISCUSSION

Plaintiff seeks summary judgment, or alternatively a remand because the ALJ allegedly erroneous and impermissibly dismissed his subjective symptom testimony.

### A.  Pertinent Law

If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Unless an ALJ makes a finding of malingering based on affirmative evidence thereof, the ALJ may reject a claimant's testimony regarding the severity of his symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. Id. (citations omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), conflicts between the claimant's testimony and the claimant's conduct

(e.g., daily activities, work record, whether/degree to which claimant sought/obtained treatment), or on internal contradictions in that testimony. Robbins, 466 F.3d at 883 (citing Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997)); Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### B. Pertinent Facts

On March 14, 2005, plaintiff testified regarding his symptoms and the severity of his pain, stating that he experienced: (i) headaches and pain in his neck, lower back, and knee (AR 553); (ii) random headaches everyday and severe headaches every couple of days that sometimes lasted as long as three days and force him to lay down all day (AR 553, 556-57); (iii) constant neck pain that radiated to his head and made his left hand numb (AR 555); (iv) pain in his lower back that prevented him from bending down too far, staying in one position for a long period of time, and walking too far (AR 556); (v) pain in his right knee (AR 556); and (vi) rectal bleeding, which plaintiff characterized as a side effect of his medications. (AR 558).

Plaintiff also testified about the treatment he received and/or elected not to receive, stating, inter alia: (i) he used pain medication (AR 554); (ii) he received injections, transcutaneous electrical nerve stimulation ("TENS") unit therapy, and physical therapy (AR 555); (iii) he used a cold towel over his eyes to relieve the

headache pain (AR 554); (iv) he was prescribed and used a cane to alleviate the pain in his right knee (AR 556); and (v) he declined surgery because he was informed there was a risk of paralysis. (AR 555-56).

Aside from plaintiff's testimony, the record reflects plaintiff received the following treatment: (i) a cervical (neck) epidural injection (AR 197); (ii) a caudal (lower back) epidural injection (AR 181, 196); and (iii) medication consisting of Naprosyn, over-the-counter Motrin, and Midrin. (AR 183, 232, 397, 416). Plaintiff's physician referred him to, and plaintiff received treatment from, a pain clinic. (AR 183, 204).

The record also reflects the effects and results of the treatment plaintiff received. Dr. Barry Chi's report reflects that plaintiff's neck and lower back pain "improved transiently," following a cervical (neck) epidural injection, and that the injection provided plaintiff with six months of symptomatic relief. (AR 195). In December 1996, plaintiff experienced headache relief with Naprosyn and over-the-counter Motrin. (AR 416). In July 1998, plaintiff reported that his headaches were "somewhat better" with Motrin. (AR 232). In May 1999, plaintiff reported his headaches were "less frequent" and "mild" with Midrin. (AR 183). In July 1999, while plaintiff was still taking Midrin, he reported that his headaches were overall "better." (AR 397).

### C.     A Remand is Appropriate

The ALJ's stated reasons for discounting plaintiff's complaints fall into two categories: (1) conflicts between the claimant's testimony and the claimant's conduct – specifically, the fact that plaintiff received and reported that his symptoms were relieved by treatment, at least some of which the ALJ characterized as "conservative" treatment; and (2) the absence of corroborating objective medical evidence. The Court finds that remand is appropriate because the ALJ's first reason for discounting plaintiff's credibility is based on an error which this Court cannot find to be immaterial, and the ALJ's second reason for

discounting the plaintiff's testimony cannot, as a matter of law, serve as the sole basis for rejecting a plaintiff's subjective pain testimony.

The ALJ's conclusion that plaintiff received and reported that his symptoms were relieved by "conservative" treatment is based, at least in part, on the ALJ's erroneous belief that "none of [plaintiff's] physicians referred him to a pain clinic." Both parties agree, and the record reflects that the ALJ was simply wrong, and that plaintiff was referred to, and did in fact receive treatment at a pain clinic. (Plaintiff's Motion at 7-8; Defendant's Motion at 5; AR 181, 204, 207). As these facts corroborate, rather than contradict plaintiff's subjective pain complaints, this Court cannot find that such facts were immaterial to the ALJ's assessment of defendant's credibility.

The Court also notes that the ALJ, in characterizing plaintiff's treatment as "conservative," referred only to medication, physical therapy and exercise, and did not refer to the multiple injections plaintiff received. Although the ALJ later mentioned, and thus was cognizant of the fact that plaintiff had received multiple epidural injections, the Court cannot discern whether the ALJ viewed such injections as part of a "conservative" course of treatment or not, and if not, whether the ALJ's assessment, discussed above, that plaintiff's subjective complaints were inconsistent with the conservative treatment he received, would have been altered.[3] The ALJ should clarify this point on remand.

---

[3]In at least two cases, the use of injections, such as those administered to plaintiff in this case, have been characterized as part of a "conservative," or "more conservative" course of treatment. See Baisa v. Barnhart, 2006 WL 1348379 (W.D. Tex) (physician recommended claimant undergo surgery for lower back and leg pain because "more conservative treatment such as epidural injections, physical therapy, and pain medication were not causing a reduction in [claimant's] pain"); Bennet v. Barnhart, 264 F. Supp. 2d 238, 240 (W.D. Pa. 2003) ("[Claimant] received conservative treatment [after lower back injury], including
(continued...)

Because (i) the ALJ's conclusion that plaintiff's subjective complaints were inconsistent with the conservative course of treatment he received is based on at least one error which this Court cannot find to be immaterial; (ii) the sole remaining reason the ALJ articulated for discounting plaintiff's testimony was the absence of corroborating objective medical evidence; and (iii) an ALJ's rejection of a plaintiff's subjective pain testimony may not be predicated solely on the absence of corroborating objective medical evidence, a remand of this matter is warranted.[4]

///
///
///
///
///
///
///
///

---

[3](...continued)
physical therapy, work hardening, chiropractic manipulation, and epidural injections.").

[4]The ALJ noted that plaintiff testified that his rectal bleeding was due to side effects from his medications and that the treating physician did not find any cause for such bleeding or address the condition as severe. (AR 22). It is unclear whether the ALJ included this information (i) because it was a basis upon which the ALJ discounted plaintiff's credibility; (ii) to establish that there was no need to make a finding as to the credibility of plaintiff's complaint in this regard because there was no medically determinable impairment that could reasonably give rise to such a complaint; and/or (iii) because an ALJ is required to consider the impact of side effects which can have a significant impact on an individual's ability to work. If the ALJ cites to or relies upon such information on remand, he should provide clarification on this point.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is reversed in part, and this matter is remanded for further administrative action consistent with this Memorandum of Opinion and Order of Remand.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 13, 2007

/s/
_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[5] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)